**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT LARGE ex rel., S.L., a minor,** | ) | |
| | ) | |
| **Plaintiff-Claimant,** | ) | |
| | ) | No. 12 C 50101 |
| v. | ) | |
| | ) | **Iain D. Johnston** |
| **CAROLYN W. COLVIN, Acting** | ) | **Magistrate Judge** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant-Respondent.** | ) | |

## MEMORANDUM OPINION AND ORDER

Robert Large, on behalf of his minor daughter S.L. ("Claimant"), brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision by Respondent Carolyn W. Colvin[1], Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for supplemental security income ("SSI") benefits. This matter is before the Court on Claimant's motion for summary judgment [Dkt. # 18].

Claimant argues that the Commissioner's decision denying her application for SSI should be reversed or remanded for further proceedings because the Administrative Law Judge ("ALJ") failed to make required credibility determinations, and provided a deficient functional equivalence determination regarding her ability to acquire and use information. For the reasons set forth more fully below, Claimant's motion for summary judgment [Dkt. # 18] is granted in part. The Commissioner's decision is reversed, and this matter is remanded to the Social Security

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure ("Rule") 25, Carolyn W. Colvin is automatically substituted as the Defendant in this suit. Pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action is required to continue this suit.

Administration ("SSA") for further proceedings consistent with this Memorandum Opinion and Order. On the present record, this Court declines to remand with an order to award benefits.

## I. BACKGROUND

### A. *Procedural History*

Claimant filed an application for SSI benefits on December 15, 2008, alleging a disability onset date of September 1, 2007, due to attention deficit hyperactivity disorder ("ADHD"). R.20, 111. The SSA denied the application on March 4, 2009. R.60. Claimant filed a request for reconsideration on April 3, 2009. R.61. That request was denied June 18, 2009. *Id*. Claimant filed a timely written request for a hearing on July 19, 2009. R.78. The ALJ conducted a video hearing on April 21, 2010. R.35. Claimant and her parents attended the hearing, and Claimant's father was the only witness who testified. *Id*. Claimant was 7 years old at the time of the hearing. R.44. All parties agreed that she was too young to testify. R.57. Claimant's mother chose not to testify and waited outside of the hearing room with Claimant. *Id*.

On August 20, 2010, the ALJ issued a decision denying the claim for benefits. R.17-29. Claimant filed a timely request to review the ALJ's decision on September 17, 2010. R.12. The Appeals Council denied review on January 18, 2012, making the ALJ's decision the final decision of the Commissioner. R.1. Claimant subsequently filed this appeal pursuant to 42 U.S.C. § 405(g). Claimant's objections to the ALJ's decision are limited to his findings in the domain of acquiring and using information and the impact of those findings on her disability status. Accordingly, the Court will focus on the facts in the record related to those findings.

### B. *Hearing Testimony* - **Claimant's Father, Robert Large**

Mr. Large testified that Claimant was 7 years old and in second grade at the time of the

hearing. R.44. He told the ALJ that Claimant had been prescribed Clonidine to help her sleep, and Concerta to control her ADHD. R.45,46,380. Mr. Large gave Claimant Clonidine at night and stated that sometimes it worked well and sometimes it did not. R.45. He also gave Claimant 18 mg of Concerta in the morning to treat her ADHD, but did not think it made much of a difference. R.46,49,380. He further testified that Claimant cannot stay focused on one thing for very long and does not follow directions. R.51,52. Claimant can not sit still and play a board game at home. R.55. Claimant also gets in trouble at school for moving around, not sitting still, not paying attention, and trying to give other children answers. R.52,55. However, Claimant has not been suspended from school. R.52,55. When Mr. Large met with Claimant's teachers, they told him that Claimant was struggling academically. R.46.

*C. School Records*

Claimant attends Erie Elementary School in Erie, Illinois. R.185. She has received early intervention support from the school's Response to Intervention team since preschool. *Id*. The school completed a special education evaluation and developed an Individual Education Plan ("IEP") for Claimant in November 2008, when she was in kindergarten. R.192. At that time, Claimant had been diagnosed with ADHD, and her teachers and parents decided to put her in a special education program immediately. R.188. Claimant's math skills were progressing, but her sentence reading and writing skills were below grade level. *Id*. Claimant's teachers reported that she had focusing difficulties and was impulsive. *Id*. She could not pay attention during classroom instruction, whole group, small group, or independent seatwork. *Id*.

The record includes five teacher questionnaires that were filled out between 2008 and 2010 by Claimant's kindergarten through second grade teachers, and a school psychologist.

3

Every teacher and the psychologist noted that Claimant had problems functioning in the domain of acquiring and using information. The questionnaires contained 10 categories in the domain of acquiring and using information, and asked the teachers to rank Claimant's functioning in each category on a scale of 1 through 5. 1 indicated "no problem"; 2 indicated "a slight problem"; 3 indicated "an obvious problem"; 4 indicated "a serious problem"; and 5 indicated a "very serious problem." The questionnaire filled out by the school psychologist in May 2008 indicated a very serious problem in the category of "expressing ideas in written form," and obvious problems in the remaining 9 categories. R.122.

The questionnaire filled out by Claimant's kindergarten teacher indicated very serious problems in 2 categories; serious problems in 3 categories; obvious problems in 4 categories and a slight problem in the category of "understanding and participating in class discussions." R.132. The questionnaire filled out by Claimant's first grade teacher in January 2009, indicated very serious problems in 4 categories; serious problems in 3 categories, and obvious problems in the remaining three categories. R.174. That teacher further noted that Claimant needed constant assistance and that writing down thoughts on paper was a real struggle. *Id*. Claimant also had a hard time listening to and comprehending stories and directions. Id. The teacher noted that Claimant spent one to one and a half hours a day in a special education resource room. *Id*. A questionnaire filled out by the same teacher in March 2009, indicated very serious problems in 1 category; serious problems in 5 categories; and obvious problems in the remaining 4 categories. R.223. The teacher noted that Claimant easily forgot instructions, got out of her seat for no reason and was easily distracted. *Id*. Claimant also could not concentrate long enough to calculate simple math problems and if she calculated the answer she forgot it before she could

4

write it down. *Id*.

Claimant's first grade special education teacher filled out a questionnaire in April 2009. R.232. She noted very serious problems in 5 categories and serious problems in the other 5 categories. *Id*. That teacher noted that Claimant needed constant redirection to task and had difficulty being attentive with computer games. *Id*. In May 2010, Claimant's second grade and special education teachers jointly filled out a questionnaire indicating that Claimant had very serious problems in the category of "reading and comprehending written material"; serious problems in 6 categories; obvious problems 2 categories and a slight problem in the category of "comprehending oral instructions." R.275. Those teachers also noted that Claimant completed her seat work in a resource room for "redirection/reteaching and prompts to stay on task." *Id*. The teachers also indicated that reading and math instruction for third grade would be with the special education teacher. *Id*.

Claimant had another IEP conference in April 2010. R.282-96. Claimant's teachers and parents decided that for third grade, Claimant's special education time would increase from 28% percent of the day to 49% of the day. R.290. The only time Claimant would not be using special education resources was for physical education, music, art, guidance, and computers. R.290. She was to be placed in a "self-contained" classroom for her core classes - math, reading, and English. *Id*. She was also scheduled to receive speech and language services for 40 minutes per week. *Id*. Claimant's IEP also called for testing accommodations and the use of assistive devices in all subjects. R.287-88.

## D. Medical Evidence

When Claimant was in first grade, she was referred to Sinnissippi Centers for a clinical

assessment due to concerns with her academic progress and behavioral issues. On October 13, 2009, Claimant and her father met with Dr. Muhammad Azhar, a psychologist at Sinnissippi Centers. Dr. Azhar completed a Psychiatric Evaluation and diagnosed Claimant with ADHD, separation anxiety disorder, learning disorders in reading and mathematics, and assigned her a Global Assessment of Functioning score of 50. R.380. He prescribed her Concerta to treat her ADHD and Clonidine for her sleep issues. R.380.

Two state agency psychologists reviewed Claimant's file and provided opinions as to her functional abilities. Dr. Taylor reviewed Claimant's file in March 2009 and opined that she did not meet, medically equal, or functionally equal a listed impairment. R.310. Specifically, he found that Claimant had marked limitations in the domain of attending and completing tasks; less than marked limitations in the domains of acquiring and using information, interacting and relating with others, caring for yourself, and health and physical well-being; and no limitations in moving about and manipulating objects. R.312-315. In support of his finding that Claimant had less than marked limitations in acquiring and using information, Dr. Taylor noted that Claimant's "teacher notes that [she] has obvious to very serious problems in this area with a need for constant assistance due to difficulty staying on task." R.312. He also noted that Claimant spent 450 minutes per week in a special education resource classroom. *Id.*

Dr. Heinrich reviewed Claimant's file in June 2009 and also opined that she did not meet, medically equal, or functionally equal a listed impairment. R.344. Specifically, he found that Claimant had marked limitations in attending and completing tasks; less than marked limitations in acquiring and using information, interacting and relating with others, and caring for yourself; and no limitations in moving about and manipulating objects and health and physical well-being.

R.345-347. In support of his finding that Claimant had less than marked limitations in acquiring and using information, Dr. Heinrich opined that Claimant's "learning difficulties arise more from attention problems than cognitive deficits." R.346. He also opined that Claimant was making progress with her current ADHD treatment and that her mother's statements were credible. R.349.

*E. The ALJ's Decision - August 20, 2010*

After a hearing and review of the medical evidence, the ALJ determined Claimant was not disabled and denied her application for SSI benfits. R.17-29. The ALJ evaluated Claimant's application under the requisite three-step sequential evaluation process to determine whether she was disabled. R.18. The ALJ noted that Claimant was school-age when she filed her application for benefits and at the time of the hearing. R.20. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since December 15, 2008, the application date. R.20. At step two, the ALJ determined Claimant had the following severe impairments: ADHD, separation anxiety disorder, rule out learning disorder, and speech delay. *Id*. At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R.20. In support of this finding, the ALJ stated that he "considered the criteria set forth in sections 112.06 (Anxiety Disorders) and 112.11 (Attention Deficit Hyperactivity Disorders)." *Id*. The ALJ also stated that he relied upon the conclusions of the non-examining state agency medical consultants to infer this result. *Id*.

The ALJ also found that Claimant did not have an impairment or combination of impairments that functionally equaled listings 20 C.F.R. 416.924(d) or 416.926(a). R.28. In the

7

six relevant functional equivalence domains, the ALJ found that Claimant had a marked limitation with respect to attending to and completing tasks. R.25. In the domains of acquiring and using information; interacting and relating with others; and caring for yourself, the ALJ found that Claimant had less than marked limitations. R. 23,25,27. In the remaining two domains, moving about and manipulating objects and health and physical well-being, the ALJ found that Claimant had no limitations. R.26,28. Because the ALJ found that Claimant only had marked limitations in one domain and had either less than marked or no limitations in the remaining five domains, the ALJ found that she was not disabled, as defined by the SSA, as of December 15, 2008. R.28.

In finding that Claimant had less than marked limitations in acquiring and using information, the ALJ noted that Claimant's teachers noted "significant problems with her ability to learn." R.21. But the ALJ concluded that those problems resulted "primarily from her ADHD symptoms, including distractibility, impulsivity, restlessness, and failure to complete tasks." *Id*. The ALJ also noted that several teacher questionnaires were submitted before Claimant began taking Concerta to treat her ADHD in October 2009. R.22.

The ALJ acknowledged that Claimant's teachers had "remarked upon very serious problems in learning and acquiring information," and that she rarely completed homework. R.24. He also noted that Claimant would require intensified special education support with the addition of self-contained math, English and reading to her existing special education resource room support and speech therapy. R.24. The ALJ assigned information provided by Claimant's parents minimal weight because he believed that they were not well-positioned to offer dispassionate insight into the claimant's functioning. R.22. The ALJ assigned substantial weight to the

opinions of the agency's non-examining medical consultants, Dr. Taylor and Dr. Heinrich. R.22.

## II. LEGAL STANDARD

*A. Standard of Review*

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Counsel denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Schoenfeld v. Apfel,* 237 F.3d 788, 792 (7th Cir. 2001).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, the reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). The reviewing court may not, however, "displace the ALJ's

judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## *B. Disability Standard for a Child*

A child is disabled within the meaning of the Social Security Act if the child is not engaged in substantial gainful activity and "has a medically determinable physical or mental impairment or combination of impairments that causes marked or severe functional limitations, and that can be expected to cause death or that has lasted and can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.903. The ALJ applies a three-step sequential evaluation to determine whether an individual under the age of 18 is disabled. 20 C.F.R. § 416.924(a). Under this process, the ALJ must inquire, in the following order, whether: (1) Claimant is engaged in substantial gainful activity; (2) Claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe"; and (3) Claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing, or that functionally equals the listing. *Id*.

To functionally equal a listing, the impairment must cause a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(a). The domains of functioning are: (1) Acquiring and Using Information; (2)

10

Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). A "marked" limitation occurs when the impairment interferes with Claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926(e)(2)(i). An "extreme" limitation occurs when the impairment interferes very seriously with claimant's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

### III. DISCUSSION

Claimant's objections to the ALJ's decision are limited to his finding that Claimant had less than marked limitations in the domain of acquiring and using information, and the analysis and evidentiary support for that finding. Claimant argues that the ALJ erred in finding that she had less than marked limitations in the domain of acquiring and using information, and that the record supports a finding of marked limitations in that domain. Alternatively, Respondent argues that the ALJ's finding is supported by substantial evidence in the record as a whole. Both parties concede that Claimant has marked limitations in the domain of attending to and completing tasks and do not take issue with the ALJ's findings as to the remaining four domains. Accordingly, this Court's analysis is limited to the record evidence, testimony, and the ALJ's findings related to Claimant's ability to acquire and use information.

Claimant raises the following issues: (1) the ALJ failed to make a proper credibility determination regarding Claimant's parents' statements as to her abilities in the domain of acquiring and using information; (2) the ALJ failed to address evidence contrary to his finding that Claimant had a less than marked limitation in the domain of acquiring and using

11

information; (3) the ALJ failed to adequately explain that finding; and (4) the ALJ failed to properly weigh relevant teacher questionnaires pursuant to SSR 06-3p.

*A. Credibility*

Because the ALJ is in the best position to observe witnesses, an ALJ's credibility finding will not be overturned as long as it has some support in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1178-1179 (7th Cir. 2001). Although the ALJ is not required to explain every factor in making a credibility determination, his opinion "must contain specific reasons for the finding on credibility, supported by the evidence in the record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and reasons for the weight." *Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003).

As stated above, the ALJ assigned information provided by Claimant's parents minimal weight because he found that they were not well-positioned to offer dispassionate insight into the claimant's functioning. R.22. However, in questioning the credibility of Claimant's parents, the ALJ did not address the factors for determining credibility outlined in SSR 96-7.

SSR 96-7p provides that an ALJ must consider certain factors when evaluating credibility. Those factors include the Claimant's treatment history, daily activities and symptoms. The ALJ's stated reasons for giving statements from Claimant's parents minimal weight related to Mr. Large's criminal record, a DCFS investigation unrelated to Claimant, a perceived chaotic family life and questionable parenting styles. R.22. Those facts have little if any relation to Claimant's parents' ability to provide truthful information on Claimant's ADHD condition. Accordingly, this case is remanded so that the ALJ can analyze the credibility of

12

Claimant's parents in terms of their ability to truthfully testify as to Claimant's ADHD condition. The credibility determination should not be based solely on their criminal records or parenting style.

Moreover, and critically, the credibility findings must be based on accurate facts and considerations. Notably, the ALJ specifically discredited the father's testimony that the medication Dr. Azar prescribed and that SL took did not make "any difference" with SL. In discrediting the father's testimony in this regard, the ALJ stated the following: "In point of fact, as of February 2010, contrary to his hearing testimony, the claimant's father acknowledged . . . that the medication improved his daughter's concentration." R.22 Unfortunately, the ALJ incorrectly attributed that statement to the father, when, in point of fact, SL made that statement. Therefore, a major basis for not crediting the father's testimony was erroneous.

Additionally, Respondent's brief improperly attempted to bolster the ALJ's finding that the father's testimony was not credible on allegations not relied upon by the ALJ. Indeed, the brief contains at least three assertions that were not cited by the ALJ as a basis for discrediting the father's testimony. Those efforts to bolster the ALJ's credibility determination are unavailing. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

### B. Limitations in Acquiring and Using Information

"Acquiring and using information refers to how well a child acquires or learns information and how well [she] uses the information [she] has learned." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009)(citing C.F.R. § 416.926a(g)). A school-age child, between the ages of 6 and 12, should be able to learn to read, write, and do math, and discuss history and science. 20 C.F.R. § 416.926a(g)(2)(iv). She should also be able to use those skills in

academic situations to demonstrate what she has learned. *Id*. For instance, she should be able to produce oral and written projects, solve math problems, and take tests. *Id.* She should also be able to apply those skills to daily living situations at home and in the community. *Id*.

Several aspects of the ALJ's analysis of this domain appear deficient. The Seventh Circuit has held that "the ALJ must consider 'all relevant evidence' and may not analyze only that information supporting the ALJ's final conclusion." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)(citing *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). Although the ALJ is not required to articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss evidence that contradicts the Commissioner's position. *Id*. In this case, the ALJ did not explain why he did not credit portions of the record that were favorable to Claimant. *See Hopgood*, 578 F.3d at 700; *Murphy v. Astrue*, 496 F.3d 630, 634-35 (7th Cir. 2007).

As stated above, the ALJ gave substantial weight to the opinions of the non-examining agency consultants, Dr. Taylor and Dr. Heinrich. Both doctors opined in March and June 2009, respectively, that Claimant had less than marked limitations in the domain of acquiring and using information. However, those opinions were formed without the benefit of Claimant's April 2010 IEP conference report, or her most recent teacher questionnaire from May 2010. The 2010 IEP indicated that in third grade, Claimant required a dramatic increase in special education services. Additionally, the May 2010 teacher questionnaire highlighted Claimant's continuing problems in the domain of acquiring and using information. In his decision, the ALJ did not address the extent to which, if at all, this additional information would have impacted the opinions of Dr. Taylor or Dr. Heinrich. On remanded, the ALJ should consider whether the opinions of the agency consultants are still entitled to substantial weight in light of the new information

14

provided in the 2010 IEP conference report and teacher questionnaire.

On remand, the ALJ should also provide more analysis and explanation as to why he did not credit the findings that Claimant had serious and very serious problems in acquiring and using information outlined in her teacher questionnaires. *See Giles ex. rel. Giles v. Astrue*, 183 F.3d 483, 488 (7th Cir. 2007). In his decision, the ALJ mentioned that Claimant's teachers have "noted significant problems with her ability to learn" and "remarked upon very serious problems in learning and acquiring information." R.21, 24. However, he concluded that those problems "result primarily from her ADHD symptoms, including distractibility, impulsivity, restlessness, and failure to complete tasks." R.21. SSR 09-2p provides that an ALJ "should analyze and evaluate relevant evidence for consistency, and resolve any inconsistencies that need to be resolved." Claimant's documented limitations mirrored the indicators for limitations in the domain of "acquiring and using information." Those indicators include poor grades, inconsistent academic performance, receipt of special education services, speech/language services, and testing accommodations. *See* SSR 09-3p. On remand, the ALJ should better explain why this evidence does not support a finding of a marked limitations in the domain of "acquiring and using information."

The ALJ should also better explain, given the context, why Claimant's promotion to third grade supports a finding of less than marked limitations in "acquiring and using information." The ALJ appears to have given substantial weight to the fact that Claimant was promoted to third grade. Even with the promotion, Claimant was still a half to a whole grade level behind her peers in all core subjects. She also was not performing well enough to receive letter grades, and the number of special education hours she needed doubled from second to third grade. In third grade,

Claimant also needed new and additional classroom accommodations, more generous testing allowances, and had to be completely removed to a self-contained classroom for math, reading and English. On these facts, the ALJ did not build a logical bridge to his conclusion that Claimant has less than marked limitations in acquiring and using information. *See Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004).

## IV. CONCLUSION

For the reasons set forth above, Claimant's motion for summary judgment is granted in part. This case is remanded to the Social Security Administration for further proceedings consistent with the Memorandum Opinion and Order.

It is so ordered.

_____

U.S. Magistrate Judge